(67 Misc. Rep. 262.)

### TAYLOR et al. v. GUINAN.

(Supreme Court, Trial Term, Kings County.   April, 1910.)

CONTRACTS (§ 66*)—CONSIDERATION—PAYMENT OF DEBT OF ANOTHER.

> Where a surety for a contractor with the United States had agreed to pay all persons supplying the contractor with labor and materials, and on the refusal of one who has furnished a dredge to continue its use until the amount due him was paid the surety agreed with such owner to pay him if he would continue his work, the advantage to the surety of having the work progress was a sufficient consideration for his promise.
>
> [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 241; Dec. Dig. § 66.*]

Action by Winfield S. Taylor and George R. Pearson against Bernard F. Guinan.   Verdict for plaintiffs.   On motion to set aside verdict.   Denied.

Robinson & Robinson (George L. Robinson, of counsel), for plaintiffs.

H. B. Philbrook (George H. Gilman, of counsel), for defendant.

PUTNAM, J.   The plaintiffs had been supplying a dredge at the hire of $40 per day to one Michael Flannery, who was a contractor engaged in dredging out the Shrewsbury river.   Flannery had given to the United States a contractor's bond, upon which the defendant was a surety.   By Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1909, p. 948), such sureties are made answerable for claims by any subcontractors.   Plaintiffs' work for Flannery began in the spring of 1906.   About the first part of June, Flannery's payments fell behind, so that another subcontractor, who furnished the steam tug, stopped work, which naturally interrupted the dredging operations.   Upward of $1,000 was then owing to plaintiffs.   On June 10th an interview took place at the defendant's office.   It is claimed that defendant then stated that Flannery was sick, and that he, Guinan, as bondsman, had to go ahead with the work to protect himself, under a power of attorney from Flannery, and that, if plaintiffs would continue with their work, he would pay their arrears out of the first moneys he should collect from the United States.   Mr. Taylor testified that defendant also said:

"I have this percentage due, more than enough to pay you.   I am a responsible man, and I will guarantee to pay you."

Following this, defendant made a payment to plaintiffs of $450, being $240 for six days' advance hire of the dredge and $210 claimed to be on account of back work.   Plaintiffs then went on with their work until June 23d, when they were stopped by defendant's order.   The suit is for the balance claimed on the entire work, both before and after the interview of June 10th.   Defendant claimed that such a promise to pay for past services was without consideration, and also was void under the statute of frauds—which objections are again urged upon this motion after verdict.

The facts, however, show that the debt which Mr. Guinan promised to pay was not the debt of another within the statute of frauds.   It

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was a debt for which defendant already stood bound. He was a surety upon whom the federal statute imposed the obligation that he "shall promptly make payments to all persons supplying him or them [the contractor or contractors] with labor and materials in the prosecution of the work provided for in such contract." Furthermore, Mr. Guinan then had in hand the compensation being earned by this contract. The government warrants issued in Flannery's name were turned over to, and received by, Mr. Guinan, who had thus realized such a payment of $1,000, or thereabouts, on June 7th —three days before this promise—followed by later collections in August, September, and in October, and subsequently, amounting to over $4,000. Although such a government contract cannot be formally assigned, Mr. Guinan's position as surety, after he had interposed and taken the work in hand, had placed him in a beneficial position similar to that of an assignee, so as to reach and hold the fruits of the dredging contract as they should be collected; and this advantage imposed a corresponding duty to pay for the labor and use of the dredge which had yielded these results. Hence his promise to pay was but a just recognition of his own double obligation, for which there was sufficient consideration (Mannetti v. Doege, 48 App. Div. 567, 62 N. Y. Supp. 918), and it was not within the statute of frauds (Reisler v. Silbermintz, 99 App. Div. 131, 90 N. Y. Supp. 967; Desmond v. Schenck, 36 App. Div. 317, 55 N. Y. Supp. 251).

Although this liability of a surety on such a contractor's bond was enforceable only in the federal court for the local district in which the work was done, such a liability can be regarded by any other court in which this promise comes in question. While the defendant testified that all the subsequent payments received under this contract were applied to the discharge of claims owing to later contractors and for expenses incurred in the work, so that he had made no profit on the transaction, it was open to the jury to infer that his promise to pay plaintiffs out of the first moneys collected gave them a right of priority; and, as he afterward paid them nothing from the $4,000 collected, that defendant's promise had not been fulfilled.

The motion to set aside the verdict is therefore denied.

Motion denied.